IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GE PACKAGED POWER, INC.,
and GENERAL ELECTRIC
INTERNATIONAL, INC.

                      Plaintiffs,

   v.                                     1:05-cv-1517-WSD

READINESS MANAGEMENT
SUPPORT, L.C.

                      Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant's Readiness Management Support, L.C.'s ("RMS") Motion in Limine No. 1 to Exclude Parol Evidence Regarding Negotiations Prior to the Purchase Order [100]. The Court conducted a pretrial conference on this matter on June 27, 2007 ("Pretrial Conference").

**I.      BACKGROUND**

RMS seeks to exclude from evidence "all documents relating to the terms of the Purchase Order, except to the extent such documents are relevant to the material issue of the definition of 'refurbished.'"

This case involves a contract between RMS and GE for two turbine power generator sets meeting specific requirements ("Purchase Order"), one of which was that the generators contain "EAS1" type turbines.  It is undisputed that GE delivered two generator sets to RMS, but those generator sets used "AP1" type turbines.[1]  The parties dispute whether RMS accepted the generators despite their nonconformity, and if so, whether it properly revoked that acceptance.

Plaintiffs General Electric Packaged Power, Inc. and General Electric International, Inc. (collectively, "GE") represented at the Pretrial Conference that they will also seek to argue that the generator sets conformed to the Purchase Order, which, but for a scrivener's error, would have called for AP1 turbines.  GE seeks to introduce documents concerning the formation of the Purchase Order, specifically the August 30, 2003 pre-qualification documents ("Pre-Qualification Documents"), for the purpose of showing that the parties meant for the Purchase Order to require AP1 turbines, even thought it expressly and exclusively required EAS1 turbines.  RMS seeks to prohibit the introduction of these materials on the grounds that they constitute parole evidence.  The parties agree that the Purchase Order is an integrated agreement.

---

[1] The generator sets are alleged to suffer other nonconformities not directly at issue in the present motion.

-2-

**II.    DISCUSSION**

New York law governs the Purchase Order in this case.  The New York Uniform Commercial Code states:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage or trade or by course of performance; and
> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

N.Y.U.C.C. § 2-202.

Evidence of "course of dealing or usage or trade or by course of performance" is only admissible to supplement the terms of an integrated contract if there is "an original determination by the court that the language used is ambiguous."  Id. at Official Cmt. § 1(c).

New York common law embodies the same essential principles:  "Having declared the contract to be the entire agreement, the law regards it as not merely the best but the exclusive evidence of the parties' intent." Unisys Corp. v. Hercules, Inc., 224 A.D. 2d 365, 368 (N.Y. App. Div. 1996) (citation omitted).

Parol evidence is admissible for the limited purpose of explaining a term that the Court has determined is ambiguous.  See, Madison Ave. Leasehold, LLC v. Madison Bentley Assoc., LLS, 8 N.Y. 3d 59, 66 (2006).

Contractual terms are unambiguous if they have "a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion."  Greenfield v. Phillies Records, Inc., 98 N.Y.2d 562, 569 (2002) (quotation and citation omitted).

The Purchase Order in the present case is an integrated agreement.  It states:

> This Agreement embodies the entire agreement between RMS (Buyer) and GE (Seller).  The parties shall not be bound or liable for any statement, representation, promise, or understanding not set forth herein.  Nothing contained in the proposals, correspondence, discussions, order acknowledgments, or other of Seller's forms has any effect on this Agreement unless specifically incorporated herein.

(Purchase Order, GC-1.)

This integration clause shows that the parties intended the Purchase Order to be a "complete and exclusive statement" of the terms of their agreement.  The integration clause specifically excludes from consideration "proposals, correspondence, discussions, order acknowledgments, or other of Seller's forms,"

in which category the Pre-Qualifying Documents fall, and such evidence cannot be used to contradict the express terms of the Agreement.

    A.    <u>The EAS1 Term</u>

The term EAS1 is not ambiguous.  GE concedes that the term EAS1 refers to a specific identifiable kind of turbine, and that there is no factual ambiguity regarding what kind of turbine the Purchase Order calls for when it includes the EAS1 term.  GE concedes that an EAS1 turbine is different from an AP1 turbine in ways which, while possibly immaterial to functionality, are definite and ascertainable.

The Purchase Order calls for EAS1 turbines on at least five occasions–once in the title, twice in Section 5.0, and twice in the Bill of Materials.  The Purchase Order does not call for AP1 turbines, nor does it allow for any turbine other than an EAS1 turbine.  Because the Purchase Order requires EAS1 turbines, and the term is not ambiguous, New York law prohibits parole evidence for the purpose of contradicting that requirement by seeking to show that RMS agreed to purchase generator sets with AP1 turbines.

GE argues that the Purchase Order was intended to allow AP1 turbines, and its exclusive provision for EAS1 turbines is merely a scrivener's error.  GE argues

that the Pre-Qualifying Documents are relevant to this scrivener's error argument because they show that RMS and GE anticipated use of AP1 turbines. GE argues, both in its trial brief and at the pretrial conference, that the Court should reform the Purchase Order as a matter of law, or at least allow them to admit evidence of its alternate "intended" meaning. RMS disputes vigorously that it intended or would have agreed to purchase generator sets containing AP1 turbines. RMS asserts that the Purchase Order accurately reflects the parties' agreement for EAS1 turbines.

GE's scrivener's error argument is foreclosed as a matter of law. Under New York law:

> To reform a contract based on mistake, a plaintiff must establish that the contract was executed under mutual mistake or a unilateral mistake induced by the defendant's fraudulent misrepresentation. However, where there is no mistake about the agreement and the only mistake alleged is in the reduction of the agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected.

Simek v. Cashin, 292 A.D.2d 439, 440 (N.Y. App. Div. 2002).

To assert a scrivener's error, it must be clear that the parties had a meeting of the minds not accurately reflected in the writing. "The principle . . . is applicable where the parties have a real and existing agreement on particular terms and subsequently find themselves signatories to a writing which does not accurately

reflect that agreement. . . ." Harris v. Uhlendorf, 24 N.Y.2d 463, 467 (1969). Scrivener's error is different from "a situation where there is a mistake as to the agreement itself on the part of one of the parties." Id. at 468. For example, in Simek, the court found a scrivener's error where the parties had stipulated to the true substance of their agreement, which was different from that reflected in a mortgage and note. 292 A.D.2d at 440. In Harris, reformation was granted where the circumstances showed there could be no mistake as to what parcel of land was the subject of the parties' knowing agreement, even though it was different from that reflected in the deed. 24 N.Y.2d at 467.

GE has not shown the existence of a "real and existing agreement" with RMS for AP1 turbines in the generator sets. RMS has consistently maintained that it intended to contract for EAS1 turbines, and the record supports that the particular type of turbine was of at least some concern to it. These facts do not show a meeting of the minds wrongly recorded. They show, at most, that GE made a mistake as to what the Purchase Order required them to sell.

Unilateral mistake is not a ground to reform a contract unless the mistake is "induced by the defendant's fraudulent misrepresentation." M.S.B. Development Co., Inc. v. Lopes, 38 A.D.3d 723 (N.Y. 2007) (citation omitted). GE does not

reflect that agreement. . . ." Harris v. Uhlendorf, 24 N.Y.2d 463, 467 (1969). Scrivener's error is different from "a situation where there is a mistake as to the agreement itself on the part of one of the parties." Id. at 468. For example, in Simek, the court found a scrivener's error where the parties had stipulated to the true substance of their agreement, which was different from that reflected in a mortgage and note. 292 A.D.2d at 440. In Harris, reformation was granted where the circumstances showed there could be no mistake as to what parcel of land was the subject of the parties' knowing agreement, even though it was different from that reflected in the deed. 24 N.Y.2d at 467.

GE has not shown the existence of a "real and existing agreement" with RMS for AP1 turbines in the generator sets. RMS has consistently maintained that it intended to contract for EAS1 turbines, and the record supports that the particular type of turbine was of at least some concern to it. These facts do not show a meeting of the minds wrongly recorded. They show, at most, that GE made a mistake as to what the Purchase Order required them to sell.

Unilateral mistake is not a ground to reform a contract unless the mistake is "induced by the defendant's fraudulent misrepresentation." M.S.B. Development Co., Inc. v. Lopes, 38 A.D.3d 723 (N.Y. 2007) (citation omitted). GE does not

allege that RMS made any fraudulent representation that induced them to sign the Purchase Order.

At the pretrial conference, GE also claimed that the Pre-Qualifying Documents were relevant to show that the generator sets substantially complied with the terms of the Purchase Order. Because this argument is not available to GE as a matter of law, the Pre-Qualifying Documents are not relevant or admissible in support of it.[2]

---

[2] At the pre-trial conference, it appeared that GE intended to raise an argument that it substantially performed under the Purchase Order. GE did not raise this argument in its trial brief. The pre-trial order is intended to "control the subsequent course of the action unless modified by a subsequent order," and is only modified "to prevent manifest injustice." Fed. R. Civ. P. 16(e). The pre-trial order is intended to bring certainty to the parties and to prevent ambush tactics and the undue surprise caused by raising new evidence or legal theories at the eleventh hour. See, Transamerica Leasing, Inc. v. Institute of London Underwriters, 430 F.3d 1326, 1334 (11th Cir. 2005). Permitting GE to raise a substantial compliance argument at the pretrial conference, a mere six business days prior to the first trial day, would create precisely the kind of surprise pre-trial orders are intended to prevent.

Even if GE had raised the substantial compliance argument in a timely fashion, New York law would prohibit it. New York law requires perfect tender for transactions between merchants:

> Unless otherwise agreed under the sections on contractual limitations of remedy . . ., if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may
> (a) reject the whole; or
> (b) accept the whole; or
> (c) accept any commercial unit or units and reject the

There is no dispute that the Purchase Order calls for generator sets with EAS1 turbines, and that GE provided generator sets with AP1 turbines. While whether RMS accepted the generator sets despite their nonconformity, and the effect the nonconformity may have on the generator sets' value, are live issues in this case,[3] GE may not offer the Pre-Qualifying Documents or any other evidence for the purpose of contradicting or amending the express terms of the Purchase Order or showing that GE fulfilled the Purchase Order's terms through substantial performance.

2. *The Refurbished Term*

---

rest. N.Y.U.C.C. § 2-601.

The perfect tender rule "requires exact performance by the seller of his obligations as a condition to his right to require acceptance by the buyer." Y&N Furniture, Inc. V. Mwabouku, 734 N.Y.S.2d 382, 384-85 (N.Y. City Civ. Ct. 2001) (quotation and citation omitted). Perfect tender permits the buyer to reject goods "for any nonconformity, even one that is trivial . . . ." Id.

[3] Although the perfect tender rule entitles the buyer to reject substantially conforming goods for a trivial nonconformity, the New York UCC permits the buyer to accept such goods despite the nonconformity. N.Y.U.C.C. § 2-606(1)(a) ("Acceptance of goods occurs when the buyer . . . [indicates that] he will take or retain them despite their non-conformity . . .")

Evidence offered solely for the purpose of showing that RMS knowingly accepted generator sets with AP1 turbines despite their nonconformity may be relevant to issues of acceptance, rejection, and revocation. The Court takes no position on the admissibility of such evidence at this time.

GE argues that any evidence related to the meaning of the term "refurbished" should be excluded as parole evidence. GE contends that the term refurbished is defined by the Purchase Order as: "For used and/or refurbished equipment, provide materials, parts and equipment that are free from defects affecting equipment operability." (Purchase Order. "Specifications" § 2.1.2.) GE contends that this definition of the term "refurbished" renders the term unambiguous and thus parole evidence to interpret the term should be disallowed. The Court disagrees.

The portion of the Purchase Order cited is not a clear definition of "refurbished," but appears to be an additional requirement for the quality of parts used to refurbish. The Purchase Order does not specify what kind or degree of work is required before a generator set is considered "refurbished" rather than merely repaired, nor does it specify whether equipment that has been refurbished and then used prior to the sale still qualifies as "refurbished." The term "refurbished" is susceptible to more than one meaning on its face, and the Purchase Order itself does not provide sufficient guidance for the Court to know which meaning was intended. The term is thus ambiguous, and the parties are permitted to introduce evidence for the purpose of clarifying its meaning.

## III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Readiness Management Support, L.C.'s ("RMS") Motion in Limine No. 1 to Exclude Parol Evidence Regarding Negotiations Prior to the Purchase Order [100] is **GRANTED** consistent with the terms of this Order.  GE may not offer the Pre-Qualifying Documents or any other evidence predating the Purchase Order for the purpose of showing that RMS agreed to purchase generator sets containing AP1 turbines or to contradict any of the Purchase Order's express terms.  The Court takes no position regarding whether any such evidence might be admissible.

**IT IS FURTHER ORDERED** the parties may seek to admit evidence bearing on the meaning of the term "refurbished" in the Purchase Order.

**SO ORDERED** this 3rd day of July, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE